**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

CORNERSTONE CONSULTANTS,
INC., and PAUL QUALY,

        Plaintiffs,

vs.

PRODUCTION INPUT SOLUTIONS,
L.L.C., VALUE-ADDED SCIENCE &
TECHNOLOGIES, L.L.C., PRAIRIE
SYSTEMS, L.L.C., GREG HOWARD,
and CHAD HAGEN,

        Defendants.

No. C 10-3072-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING THE
DEFENDANTS' MOTION TO
DISMISS**

———————————

**TABLE OF CONTENTS**

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    *A. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    *B. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    *A. The Stored Communications Act Claim* . . . . . . . . . . . . . . . . . . . . 11
        *1. Standards for dismissal pursuant to Rule 12(b)(6)* . . . . . . . . 11
        *2. Overview of the purpose and pertinent provisions of the*
           *SCA* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
        *3. Arguments of the parties* . . . . . . . . . . . . . . . . . . . . . . . . . 24
           *a. The moving defendants' initial argument* . . . . . . . . . 24
           *b. The plaintiffs' response* . . . . . . . . . . . . . . . . . . . . . . 25
           *c. The moving defendants' reply* . . . . . . . . . . . . . . . . . 27
           *d. The parties' supplemental arguments* . . . . . . . . . . . . 29

  **4.**  **Analysis** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
    *a.*  **Elements of a § 2701(a) claim** . . . . . . . . . . . . . . . 30
    *b.*  **Pleading of the elements** . . . . . . . . . . . . . . . . . . . 35
      *i.*  **Element one** . . . . . . . . . . . . . . . . . . . . . . . 35
      *ii.*  **Element two** . . . . . . . . . . . . . . . . . . . . . . . 36
      *iii.*  **Elements three and four** . . . . . . . . . . . . . . . . 45
  **5.**  **Summary** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47
**B.** **The State-Law Claims** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48
  **1.**  **Principles of supplemental jurisdiction** . . . . . . . . . . . . . . 48
  **2.**  **Arguments of the parties** . . . . . . . . . . . . . . . . . . . . . 50
  **3.**  **Analysis** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

**III. CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

The parties in this "e-mail trespass" case assert that the critical question on the defendants' motion to dismiss a claim pursuant to the Stored Communications Act (SCA), 18 U.S.C. § 2701 *et seq.*, is, who is the "provider" of "electronic communications services" capable of authorizing access to the company's e-mail server on which e-mails of an independent contractor were stored? The parties dispute whether the "provider" is the company that let an independent contractor use its e-mail system, the company's information technology contractor that provided the server on which e-mails were stored and otherwise managed, maintained, and archived the server for the company, or the internet service provider that made possible outside e-mail communications to and from the company's e-mail system. I find that the critical question, at least at this stage of the proceedings, is actually somewhat different: Have the plaintiffs adequately pleaded

that the company's access to the company's e-mail server, where the independent contractor's e-mails were stored, was unauthorized or in excess of any authorization by the entity identified in the complaint as the "provider" of the pertinent services, the information technology contractor?

## I.  INTRODUCTION

### A.  Factual Background

"When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).  Thus, the significant factual background presented here is based on the plaintiffs' allegations in their December 10, 2010, Complaint (docket no. 2), not any further factual allegations in the parties' briefing of the pending Motion To Dismiss.

According to the Complaint, plaintiff Paul Qualy is the president and sole shareholder of plaintiff Cornerstone Consultants, Inc. (CCI), an Iowa corporation with its principal place of business in Lake City, Calhoun County, in the Northern District of Iowa.[1]  Defendants Production Input Solutions, L.L.C. (PIS), and Value-Added Science & Technologies, L.L.C. (VAST), are both Iowa limited liability companies with their principal places of business in Mason City, Cerro Gordo County, in the Northern District of Iowa.[2]  The Complaint appears to treat PIS and VAST as a single entity for purposes

---

[1]In their March 17, 2011, Memorandum Of Law In Support Of Plaintiffs' Resistance To Defendants' Motion To Dismiss (Resistance Brief) (docket no. 15-1), 2, the plaintiffs add that CCI provides agribusiness consulting services to livestock producers.

[2]In their March 1, 2011, Memorandum Of Law In Support Of Defendants['] Motion
(continued...)

of the factual allegations and the claims asserted, even though they are nominally separate entities. Individual defendants Greg Howard, an Iowa resident, and Chad Hagen, a Minnesota resident, were, at the material times, agents, owners, or employees of both PIS and VAST. On or about November 19, 2007, Qualy also became a minority owner of PIS and VAST. Subsequently, on or about January 3, 2008, PIS contracted with Qualy's company, CCI, to provide business consulting services to both PIS and VAST in exchange for a salary of $100,000 per year for ten years.

Defendant PrairiE Systems, L.L.C. (PrairiE), is an Iowa limited liability company with its principal place of business in Emmetsburg, Palo Alto County, in the Northern District of Iowa. The plaintiffs allege that PrairiE is a third-party information technology and web hosting company and that it is PIS and VAST's information technology computer consulting firm. The plaintiffs also allege that "Defendant PrairiE provided electronic communication services to Defendants" through an "Exchange Server," Complaint, ¶ 52, and, more specifically still, that "[d]efendant PrairiE provided electronic storage of e-mail communications sent to and received by Plaintiffs for Defendants PIS and VAST," *id.* at ¶ 50.

The plaintiffs allege that Qualy's primary computer was a laptop paid for by CCI. Qualy used that laptop for personal e-mail through Mediacom, for business e-mail through

---

² (…continued)
To Dismiss (Defendants' Brief) (docket no. 13-1), 2, the defendants explain that both PIS and VAST were "aimed at enhancing the competitiveness of livestock producer"; that "PIS serves as a buying group for livestock production companies," so that "PIS membership allows such companies to purchase commodity feed products from PIS at a lower cost than they can achieve on their own"; and that "VAST . . . was founded to develop nutritional specialty products and consultative services for livestock production"; and that VAST's "line of products [is] available to PIS members and non-PIS members."

4

CCI, and for CCI's communication with PIS and VAST. Qualy also used his personal, private CCI e-mail account for both business and personal correspondence unrelated to the consulting services that CCI provided to PIS and VAST. Qualy's personal e-mail account and CCI e-mail account were each hosted by a different internet service provider, but messages were downloaded into the Microsoft Outlook e-mail program on Qualy's CCI laptop through the respective service provider's POP3 mail server.

The plaintiffs allege that, on or about May 1, 2008, at the request of PIS and VAST, Qualy took his CCI laptop to the offices of PIS and VAST. There, an employee of PrairiE configured the CCI laptop for file-sharing capability and a PIS e-mail account "on PIS and VAST's server." Complaint, ¶ 29. The Complaint identifies this server as the one "managed, maintained, and archived by PrairiE." *Id.* at 31; *see also id.* at ¶ 34 (referring to the same server as "the server provided by PrairiE to PIS and VAST"). The configuration of the CCI laptop involved "using a program called Microsoft Exchange (Exchange), which connects a group of computers to one server where data is stored." *Id.* at 32.

The plaintiffs allege, on information and belief, that PrairiE maintains a profile on the PIS and VAST server for each individual user and that, when a user logs on, Exchange automatically copies the user profile on each individual user's computer to the PIS and VAST server, in a process known as "synchronization." The plaintiffs also allege, on information and belief, that PrairiE compiled Qualy's personal e-mail account and CCI e-mail account with his PIS e-mail account into a single user profile, which Exchange thereafter copied onto the server provided by PrairiE to PIS and VAST when it synchronized the profile on Qualy's laptop with his profile on the PIS and VAST server. Consequently, the plaintiffs allege that PrairiE obtained and stored copies of e-mails sent to and from the plaintiffs using e-mail accounts that were entirely unrelated to CCI's

business dealings with PIS and VAST. *Id.* at 35; *see also id.* at ¶ 51 ("Among the e-mail communications retained in electronic storage by PrairiE on behalf of PIS and VAST were e-mails sent and received by Plaintiffs on e-mail accounts not provided by PIS and VAST.").

On or about April 14, 2009, PIS informed CCI of its intent to terminate the ten-year consulting contract entered into on or about January 3, 2008. The plaintiffs allege that "Plaintiff CCI [sic] continued to provide services to PIS and VAST in his [sic] capacity as an officer and manager of the companies until July 31, 2009." *Id.* at ¶ 41; *and compare id.* at ¶ 24 (alleging that PIS contracted with CCI "to provide business consulting services to both PIS and VAST in exchange for a salary of $100,000 per year for ten years"); *id.* at ¶ 23 (alleging that, on or about November 19, 2007, "Paul Qualy became a minority owner of PIS and VAST"). The plaintiffs also allege that, "[o]n or about November 13, 2009, CCI's ownership interests in PIS and VAST were repurchased by PIS and VAST." *Id.* at ¶ 43; *and compare id.* at ¶ 23 (alleging that Qualy, not CCI, became a minority owner of PIS and VAST).

The plaintiffs allege that, on or about June 23, 2009, that is, after notice of intent to terminate CCI's contract had been given, defendant Howard instructed employees of PrairiE to disconnect CCI's and Qualy's access to the PIS and VAST file-sharing drive, but to keep active CCI's and Qualy's e-mail service and connection to the Exchange server. They allege that, the same day, Howard also instructed PrairiE to create an archive folder of all e-mails sent to or received by Qualy that were already in electronic storage on the PIS and VAST server and to continue backing up any e-mails sent or received by Qualy. They also allege that, on or about July 31, 2009, the defendants terminated Qualy's PIS e-mail account. Thus, the plaintiffs allege that, from June 23, 2009, until November 25, 2009, the Exchange continued to copy personal, private e-mails

from Qualy's personal and CCI e-mail accounts onto the PIS and VAST server and that PrairiE continued to archive those e-mails copied by the Exchange server onto the PIS and VAST server.

The plaintiffs contend that, in mediation proceedings in 2010, concerning termination of CCI's contract with PIS and VAST, they "discovered that Defendants PIS, VAST, and PrairiE had possession of numerous personal, private CCI e-mails sent to and received by Plaintiffs." *Id.* at ¶ 46. This lawsuit ensued.

## B. *Procedural Background*

On December 10, 2010, plaintiffs CCI and Qualy filed the Complaint (docket no. 2) in this action against defendants PIS, VAST, PrairiE, Howard, and Hagen. Count I of the Complaint asserts a claim by both CCI and Qualy against PIS, VAST, and Howard for violation of 18 U.S.C. § 2701, a provision of the Stored Communications Act (SCA); Count II asserts a claim by both CCI and Qualy against PrairiE for violation of 18 U.S.C. § 2702, another provision of the SCA; Count III asserts a claim by both CCI and Qualy against PrairiE for negligence, premised on an alleged breach of the duty of care in the performance of work in a manner suitable for the information technology profession by compiling the plaintiffs' personal, CCI, and PIS e-mail accounts into one user profile when setting up the PIS Exchange server; Count IV asserts a claim by Qualy against PIS, Vast, and Howard for invasion of privacy, premised on the defendants' allegedly unlawfully gaining access to Qualy's personal, private CCI e-mail account and obtaining various e-mails from that account, thereby intentionally intruding upon his seclusion; and Count V asserts a claim by Qualy against defendants PIS, VAST, Howard, and Hagen for extortion, premised on use of Qualy's private, personal e-mails to attempt to obtain a favorable legal settlement in the underlying consulting contract dispute. As to Counts I and II, the

Complaint seeks actual damages, statutory damages of no less than $1,000 per violation proved, punitive damages, attorney's fees, costs, interest, and any other relief that the court deems just and equitable. As to Counts III, IV, and V, the Complaint seeks compensatory damages, costs of this action, interest, and any other relief that the court deems just and equitable.

Because the Motion To Dismiss now before me challenges only the sufficiency of the pleading of the SCA claim in Count I, I will focus here on the pleading of that claim. After incorporating the factual allegations set forth in prior paragraphs, Count I alleges the following:

> 50. Defendant PrairiE provided electronic storage of e-mail communications sent to and received by Plaintiffs for Defendants PIS and VAST.
>
> 51. Among the e-mail communications retained in electronic storage by PrairiE on behalf of PIS and VAST were e-mails sent and received by Plaintiffs on e-mail accounts not provided by PIS and VAST.
>
> 52. After June 23, 2009, Defendants PIS and VAST and their members, owners, agents, and employees, including but not limited to Defendant Greg Howard, intentionally accessed the Exchange server through which Defendant PrairiE provided electronic communication service to Defendants.
>
> 53. Alternatively, after June 23, 2009, Defendants intentionally exceeded any existing authorization to access the Exchange server through which PrairiE provided electronic communication service.
>
> 54. Plaintiffs did not authorize Defendants' access to personal, private Mediacom or CCI e-mails held in electronic storage by PrairiE, and Plaintiffs did not consent to Defendants' access.
>
> 55. By either intentionally accessing the Exchange server through which PrairiE provided electronic

communication service without authorization, or intentionally exceeding any authorized access to the server, Defendants obtained copies of electronic communications while they were in electronic storage, in violation of 18 U.S.C. § 2701(a).

56. The e-mails accessed and obtained by Defendants from the Exchange server include multiple privileged communications between Plaintiffs and their attorneys, some regarding legal strategy and analysis.

57. The e-mails accessed and obtained by Defendants from the Exchange server include multiple communications between Plaintiff Paul Qualy and a woman not his spouse using an e-mail account not provided by Defendants.

58. Defendants intentionally accessed these electronic communications while in electronic storage for purposes of intimidation, blackmail, and gaining a strategic advantage during the mediation and arbitration of Plaintiff's consulting contract dispute.

59. Plaintiffs have suffered damages which were actually and proximately caused by Defendants' intentional violation of 18 U.S.C. § 2701.

Complaint, ¶¶ 50-59.

On March 1, 2011, PrairiE filed an Answer And Affirmative Defenses (docket no. 12) denying the plaintiffs' claims against it (that is, the SCA § 2702 claim and the negligence claim in Counts II and III, respectively). On March 1, 2011, defendants PIS, VAST, Howard, and Hagen (the moving defendants) filed a pre-answer Motion To Dismiss (docket no. 13). The moving defendants seek dismissal of Count I pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted, and dismissal of Counts IV and V pursuant to Rule 12(b)(1), for lack of subject matter jurisdiction, urging the court to decline to exercise supplemental jurisdiction over those state-law claims pursuant to 28 U.S.C. § 1367, upon dismissal of the only federal claim against them, the SCA claim in Count I. On March 17, 2011, the

plaintiffs filed a Resistance To Defendants' Motion To Dismiss And Request For Oral Argument (Resistance) (docket no. 15). On March 28, 2011, the moving defendants filed a Motion For Leave To File Overlength Reply Brief (docket no. 16), with the proposed overlength Reply attached. By Order (docket no. 17), filed the next day, the court granted leave to file the overlength Reply. However, owing to a clerical error, the overlength Reply was initially attached to the original Motion To Dismiss and only later, on April 22, 2011, redocketed separately. *See* Reply (docket no. 19).

Pursuant to the plaintiffs' request, by Order (docket no. 21), dated April 26, 2011, I set telephonic oral arguments on the Motion To Dismiss for Friday, May 13, 2011. By Order (docket no. 22), dated April 27, 2011, I advised the parties of my preliminary determination of the elements of a § 2701(a) claim and directed them to file, not later than Friday, May 6, 2011, supplemental briefs addressing the following questions: (1) whether or not my identification of the elements of a § 2701(a) claim is complete and correct; and (2) whether or not (and where in the Complaint) the plaintiffs have adequately pleaded that the defendants' access to the facility in question was not authorized, or intentionally exceeded any authorization to access the facility, as required by my second element of a § 2701 claim. The plaintiffs and the moving defendants filed their supplemental briefs, as required, on May 6, 2011. *See* docket nos. 24 and 25.

I heard oral arguments as scheduled on May 13, 2011. At the oral arguments, the plaintiffs were represented by Peter J. Leo and John Gray of the Heidman Law Firm, L.L.P., in Sioux City, Iowa. The moving defendants were represented by Todd M. Lantz, who argued the motion, and David Swinton of Belin McCormick, P.C., in Des Moines, Iowa, with a client representative, Steve Weiss, also on the telephone. Counsel for non-moving defendant PrairiE, Jeff H. Jeffires and Michelle R. Rodemyer of Hopkins &

Huebnert, P.C., in Des Moines, Iowa, also monitored the arguments. I appreciate the comprehensive and illuminating briefs and the spirited oral arguments in this case.

The Motion To Dismiss is now fully submitted.

## II. LEGAL ANALYSIS

I note that the parties' arguments concerning dismissal of the state-law claims in Counts IV and V are dependent upon their views of the viability of the federal claim under the SCA in Count I. Therefore, I begin my legal analysis with the SCA claim.

### A. The Stored Communications Act Claim

### 1. Standards for dismissal pursuant to Rule 12(b)(6)

The moving defendants' challenge to the SCA claim in Count I is pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) provides for a motion to dismiss on the basis of "failure to state a claim upon which relief can be granted."[3] In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court revisited the standards for determining whether factual allegations are sufficient to survive a Rule 12(b)(6) motion to dismiss:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader

---

[3]Effective December 1, 2007, Federal Rule of Civil Procedure 12 was "amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules." FED. R. CIV. P. 12, advisory committee's note. The advisory committee notes make it clear that the "changes are to be stylistic only." *Id.* The stylistic changes to Rule 12(b)(6) are in fact minimal, as Rule 12(b)(6) continues to authorize a motion to dismiss "for failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Thus, the amendment did not change the standards for a Rule 12(b)(6) motion.

is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Conley v. Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.; Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (C.A.7 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see *Papasan v. Allain,* 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the ASSUMPTION THAT ALL THE allegations in the complaint are true (even if doubtful in fact), see, *e.g., Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508, n. 1, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic*, 550 U.S. at 555-56 (footnote omitted); *see Ashcroft v. Iqbal*, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (instructing that "short and plain statement" requirement "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation."). Thus, the Eighth Circuit Court of Appeals has recognized that, under *Bell*

*Atlantic*, "To survive a motion to dismiss, a complaint must contain factual allegations sufficient 'to raise a right to relief above the speculative level. . . .'" *Parkhurst v. Tabor*, 569 F.3d 861, 865 (8th Cir. 2009) (quoting *Bell Atlantic*, 550 U.S. at 555). To put it another way, "the complaint must allege 'only enough facts to state a claim to relief that is plausible on its face.'" *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 569 F.3d 383, 387 (8th Cir. 2009) (quoting *Bell Atlantic*, 550 U.S. at 570); *accord Iqbal*, 129 S. Ct. at 1949 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'") (quoting *Bell Atlantic*, 550 U.S. at 557).

The court must still "accept as true the plaintiff's well pleaded allegations." *Parkhurst*, 569 F.3d at 865 (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)); *B&B Hardware, Inc.*, 569 F.3d at 387 ("[W]e 'assume[ ] as true all factual allegations of the complaint'" (quoting *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007)). The court must also still "construe the complaint liberally in the light most favorable to the plaintiff." *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008) (post-*Bell Atlantic* decision). On the other hand, "[w]here the allegations show on the face of the complaint that there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is [still] appropriate." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008) (citing *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997), for this standard in a discussion of Rule 12(b)(6) standards in light of *Bell Atlantic*).

Citing *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346-47 (2005), the Eighth Circuit Court of Appeals has baldly stated that, "[t]o state a claim upon which relief can be granted, each element of the claim must be pled in the complaint." *Brown v. Simmons*, 478 F.3d 922, 923 (8th Cir. 2007). I cannot find that any fair reading of *Dura*

*Pharmaceuticals* supports such a proposition. Such a proposition is also contrary to both prior Eighth Circuit authority and subsequent Supreme Court authority.[4]

In *Dura Pharmaceuticals*, the Supreme Court "concede[d] that the Federal Rules of Civil Procedure require only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" 544 U.S. at 346 (quoting FED. R. CIV. P. 8(a)(2)). The Court also "assume[d], at least for argument's sake, that neither the Rules nor the securities statutes [at issue in that case] impose any special further requirement in respect to the pleading of" specific elements, in that case, proximate causation and economic loss. *Id.* Rather, the Court explained, "the 'short and plain statement' must provide the defendant with 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Therefore, the Court looked for any statements in the complaint that it could "fairly read as describing" the necessary element of loss caused by the defendants' misrepresentations about its device. *Id.* at 346-47 (also stating that, while "ordinary pleading rules are not meant to impose a great burden upon a plaintiff, . . . it should not prove burdensome for a plaintiff who has

---

[4]I cited *Brown* for this proposition, without criticism, in the Order For Supplemental Briefing (docket no. 22), which directed the parties to respond to my statement of the elements of a § 2701(a) claim and to address whether and where in the Complaint the plaintiffs have adequately pleaded that the defendants' access to the facility in question was not authorized or intentionally exceeded any authorization. However, it has since struck me that this statement, taken literally, requires a plaintiff to plead *explicitly* each element of a claim, not just to allege a factual basis from which each element of a claim can be inferred, as I originally—and anachronistically—read it, in the context of the later Supreme Court decisions in *Bell Atlantic* and *Iqbal*. I comment further on this statement from *Brown* here to attempt to forestall a similar misreading of *Brown* by anyone else and to suggest that, to the extent that *Brown* requires explicit pleading of each element of a claim, it is contrary to the authority on which it relies, prior circuit authority, and subsequent Supreme Court authority.

suffered an economic loss to provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind"). I believe that the Supreme Court's examination of the complaint in *Dura Pharmaceuticals* for factual allegations that can be "fairly read as describing" the necessary elements of a claim is absolutely contrary to a rule that "each element of the claim must be pled in the complaint." *Brown*, 478 F.3d at 923 (purportedly citing *Dura Pharmaceuticals* for this proposition).

Moreover, the statement in *Brown* that "each element of the claim must be pled in the complaint" is contrary to prevailing Eighth Circuit precedent at the time. *See, e.g., DuBois v. Ford Motor Credit Co.*, 276 F.3d 1019, 1022 (8th Cir. 2002) ("[T]he complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim to avoid dismissal.'" (citing *Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 627 (8th Cir. 1999)); *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999) ("'[I]t is the facts well pleaded, not the theory of recovery or legal conclusions,' that state a cause of action and put a party on notice." (quoting *Economy Housing Co. v. Continental Forest Products, Inc.*, 757 F.2d 200, 203 (8th Cir. 1985)). "It is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel." *Owsley v. Luebbers*, 281 F.3d 687, 690 (8th Cir. 2002). The decision in *Brown* is not an *en banc* decision and does not purport to state a new rule departing from Eighth Circuit precedent in light of a new Supreme Court decision. Under these circumstances, it appears that *Brown* just inaccurately characterizes both Supreme Court precedent and prior circuit precedent, and, consequently, does not control over more accurate prior panel and Supreme Court statements of the law. *See, e.g., United States v. Gaines*, ___ F.3d ___, ___, 2011 WL 1662363, *4 n.4 (8th Cir. May 4, 2011) ("Accordingly, *[United States v.] Plancarte–Vazquez*, [450 F.3d 848, 853 (8th Cir. 2006),] inaccurately characterized prior precedent. We therefore apply the more accurate prior panel statement of the law under

the rule that precludes one panel of this court from overruling a prior panel's decision." (citing *Owsley*, 281 F.3d at 690)).

Even if the decision of the Eighth Circuit Court of Appeals in *Brown* had correctly stated the law at the time, it does not do so now, in light of more recent formulations of the pleading requirements by the Supreme Court. Although the elements of a claim are certainly relevant to whether or not a complaint states a claim upon which relief can be granted, just months after the decision in *Brown*, the Supreme Court made clear that a "formulaic recitation of elements of a cause of action" will *not* suffice to state a claim upon which relief can be granted. *See Bell Atlantic*, 550 U.S. at 555. Even more recently, the Supreme Court stated the pleading requirement to be that the claimant must plead "'the plausibility of entitlement to relief,'" *see Iqbal*, ___ U.S. at ___, 129 S. Ct. at 1949 (quoting *Bell Atlantic*, 550 U.S. at 557). This formulation of the pleading standard does not require a plaintiff to plead explicitly each and every element of a claim, but to plead "'sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.'" *Iqbal*, ___ U.S. at ___, 129 S. Ct. at 1949 (quoting *Bell Atlantic*, 550 U.S. at 570); *accord Hamilton v. Palm*, 621 F.3d 816, 817 (8th Cir. 2010) (quoting this standard from *Iqbal*). "Determining whether a claim is plausible is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Hamilton*, 621 F.3d at 818 (quoting *Iqbal*, ___ U.S. at ___, 129 S. Ct. at 1950).

The rule that one panel of the Circuit Court of Appeals cannot overrule a prior panel's decision, only the *en banc* court can do so, is "subject to a limited exception in the case of an intervening Supreme Court decision that is inconsistent with circuit precedent." *United States v. Zuniga*, 579 F.3d 845, 848 (8th Cir. 2009) (*per curiam*) (citing *Young v. Hayes*, 218 F.3d 850, 853 (8th Cir. 2000)). Moreover, both the district court and the Circuit Court of Appeals or obligated to follow Supreme Court decisions. *United States*

*v. Wade*, 435 F.3d 829, 832 (8th Cir. 2006). Thus, I must follow the Supreme Court's formulation of the pleading standard, contrary language in *Brown* notwithstanding.

Here, what I believe is required in light of Supreme Court authority is pleading of allegations sufficient to raise a plausible inference as to each element of a claim or cause of action. *See Iqbal*, ___ U.S. at ___, 129 S. Ct. at 1949-50; *accord Hamilton*, 621 F.3d at 818-19; *Parkhurst*, 569 F.3d at 865 ("To survive a motion to dismiss, a complaint must contain factual allegations sufficient 'to raise a right to relief above the speculative level. . . .'" (quoting *Bell Atlantic*, 550 U.S. at 555)); *B&B Hardware, Inc.*, 569 F.3d at 387 ("[T]he complaint must allege 'only enough facts to state a claim to relief that is plausible on its face.'" (quoting *Bell Atlantic*, 550 U.S. at 570)). Moreover, allegations that raise plausible inferences of alternative scenarios, one that satisfies a particular element and one that does not satisfy that element, are sufficient to state a claim, because "[w]hich inference will prove to be correct is not an issue to be determined by a motion to dismiss." *Hamilton*, 621 F.3d at 819 (noting that the plaintiffs' complaint raised plausible inferences of both employee and independent contractor status, where "employee status" was an essential element of the plaintiffs' claim that the purported employer negligently breached its duty to maintain a safe workplace for its employees).

I will consider the sufficiency of the pleading of the SCA claim in Count I in light of these standards.

## 2. Overview of the purpose and pertinent provisions of the SCA

I find that a summary of the parties' arguments concerning the viability of the SCA claim in Count I will make more sense, if it follows an overview of the pertinent provisions of the SCA. The SCA was included as Title II of the Electronic Communications Privacy Act of 1986 (ECPA), Pub. L. No. 99-508, 100 Stat. 1848, and codified in scattered sections of Title 18 of the United States Code. *See Snow v. DirecTV,*

*Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006). The First Circuit Court of Appeals explained the genesis of the SCA, as follows:

> While drafting the ECPA's amendments to the Wiretap Act, Congress also recognized that, with the rise of remote computing operations and large databanks of stored electronic communications, threats to individual privacy extended well beyond the bounds of the Wiretap Act's prohibition against the "interception" of communications. These types of stored communications—including stored e-mail messages—were not protected by the Wiretap Act. Therefore, Congress concluded that "the information [in these communications] may be open to possible wrongful use and public disclosure by law enforcement authorities as well as unauthorized private parties." S. Rep. No. 99-541, at 3 (1986), reprinted in 1986 U.S.C.C.A.N. 3555, 3557.
>
> Congress added Title II to the ECPA to halt these potential intrusions on individual privacy.

*United States v. Councilman*, 418 F.3d 67, 80-81 (1st Cir. 2005) (footnotes omitted). More specifically, various courts have surmised from the legislative history that the general purpose of the SCA "'was to create a cause of action against computer hackers (*e.g.*, electronic trespassers).'" *Lasco Foods, Inc. v. Hall and Shaw Sales, Mktg. & Consulting, L.L.C.*, 600 F. Supp. 2d 1045, 1049 (E.D. Mo. 2009) (quoting *International Ass'n of Machinists & Aero. Workers v. Werner-Matsuda*, 390 F. Supp. 2d 479, 495 (D. Md. 2005)); *see also Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 889-90 (9th Cir. 2002) ("[T]he damage caused by computer hackers (also known as 'electronic trespassers') was a major concern of Congress in enacting the Electronic Communications Privacy Act and the Stored Communications Act. The separate provisions prohibiting unauthorized access were found necessary, in addition to the pre-existing prohibitions on interception [in the Wiretap Act], because computer hackers often do a great deal of damage to stored

communications facilities and stored communications without ever acquiring the contents of those communications." (citing cases)).

Definitions from the Wiretap Act (and the ECPA), 18 U.S.C. § 2510, are incorporated into the SCA by 18 U.S.C. § 2711(a). *Councilman*, 418 F.3d at 81. One of the problems with application of the SCA is that it "'was written prior to the advent of the Internet and the World Wide Web [and] [a]s a result, the existing statutory framework is ill-suited to address modern forms of communications.'" *United States v. Steiger*, 318 F.3d 1039, 1047 (11th Cir. 2003) (quoting *Konop*, 302 F.3d at 874). Thus, "'[c]ourts have struggled to analyze problems involving modern technology within the confines of [the SCA's] statutory framework, often with unsatisfying results.'" *Id.* (again quoting *Konop*, 302 F.3d at 874). These problems were not entirely alleviated by amendments to the Wiretap Act and the SCA in the US Patriot Act of 2001, Pub. L. No. 107-56, 115 Stat. 272. *See Konop*, 302 F.3d at 874 & n.2.

"[A] valid civil complaint under the SCA must allege a violation of one of its provisions." *Snow*, 450 F.3d at 1321 (citing 18 U.S.C. § 2707(a)). The provision on which the plaintiffs' SCA claim in Count I relies is § 2701(a). That provision states the following:

### § 2701.  Unlawful access to stored communications

(a) Offense.—Except as provided in subsection (c) of this section whoever—

(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or

(2) intentionally exceeds an authorization to access that facility;

and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic

19

> storage in such system shall be punished as provided in
> subsection (b) of this section.

18 U.S.C. § 2701(a); *see also Councilman*, 418 F.3d at 81 ("This title, commonly referred

to as the Stored Communications Act, established new punishments for accessing, without

(or in excess of) authorization, an electronic communications service facility and thereby

obtaining access to a wire or electronic communication in electronic storage.  18 U.S.C.

§ 2701(a).").[5]

The Fourth Circuit Court of Appeals recently explained more specifically how

§ 2701, which defines a criminal offense, is also the basis for a private right of action for

damages, as follows:

> Section 2701 of the SCA creates a criminal offense for
> whoever "intentionally accesses without authorization a facility
> through which an electronic communication service is
> provided" or "intentionally exceeds an authorization to access
> that facility," and by doing so "obtains, alters, or prevents
> authorized access to a wire or electronic communication while
> it is in electronic storage in such system."  18 U.S.C.A.
> § 2701(a)(1-2).
>
> Section 2707 provides a private cause of action for
> "any . . . other person aggrieved" by a violation of § 2701.
> 18 U.S.C.A. § 2707(a).  Under § 2707, a district court may
> award equitable or declaratory relief, a reasonable attorney's
> fee and other costs, and "damages under subsection (c)."  18
> U.S.C.A. § 2707(b).  Subsection (c) provides:
>
>> The court may assess as damages in a civil action under
>> this section the sum of the actual damages suffered by

---

[5]Another provision of the SCA bars electronic communications service providers
from "divulg[ing] to any person or entity the contents of a communication while in
electronic storage by that service."  18 U.S.C. § § 2702(a)(1).").  That provision is at
issue in this lawsuit in Count II of the Complaint, but the only defendant on that claim,
PrairiE, has not moved to dismiss that claim, instead answering it with a denial.

> the plaintiff and any profits made by the violator as a
> result of the violation, but in no case shall a person
> entitled to recover receive less than the sum of $1,000.
> If the violation is willful or intentional, the court may
> assess punitive damages. In the case of a successful
> action to enforce liability under this section, the court
> may assess the costs of the action, together with
> reasonable attorney fees determined by the court.
>
> *Id.* § 2707(c).

*Van Alstyne v. Electronic Scriptorium, Ltd.*, 560 F.3d 199, 204-05 (4th Cir. 2009); *Theofel v. Farey-Jones*, 359 F.3d 1066, 1072 (9th Cir. 2004) (also identifying § 2701(a) and § 2707 together as authorizing a private cause of action).

There are statutory exceptions to liability for a violation of § 2701(a) in § 2701(c). Section 2701(c) provides as follows:

> **(c) Exceptions.**—Subsection (a) of this section *does not apply* with respect to conduct authorized—
>> **(1)** by the person or entity providing a wire or electronic communications service;
>> **(2)** by a user of that service with respect to a communication of or intended for that user; or
>> **(3)** in section 2703, 2704 or 2518 of this title.

18 U.S.C. § 2701(c) (emphasis added); *see also* 18 U.S.C. § 2701(a) (stating, *"Except as provided in subsection (c)* of this section. . . ." (emphasis added)); *Theofel*, 359 F.3d at 1072 (identifying the § 2701(c) exceptions to liability for a violation of § 2701(a)).[6] This

---

[6]Although the exception in § 2701(c)(3) does not appear to be at issue in this case, I note that § 2703 sets requirements for governmental access, § 2704 sets requirements for backup preservation upon request of a government entity acting under § 2703, and § 2518 sets out the procedure for interception of wire, oral, or electronic communications pursuant to a court order. The SCA also exempts from liability all parties acting pursuant to a court order, *see* 28 U.S.C. § 2707(e), but that exemption also is not at issue here.

provision at least theoretically "establishes virtually complete immunity for a service provider that 'obtains, alters, or prevents authorized access to' e-mail that is 'in electronic storage' in its system." *Councilman*, 418 F.3d at 81 (quoting § 2701, and citing *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 115 (3d Cir. 2003), for the "complete immunity" construction of § 2701(c)); *Fraser*, 352 F.3d at 115 (stating, "[W]e read § 2701(c) literally to except from Title II's protection all searches by communications service providers," and holding that, because an independent insurance agent's e-mail was stored on the insurance company's system (which the insurance company administered), the insurance company's search of that e-mail fell within § 2701(c)'s exception to the SCA).[7]

Some courts have found that the SCA provides a cause of action for unauthorized access to electronic communications that is analogous to a common-law action for trespass. *See Theofel*, 359 F.3d at 1072; *cf. Van Alstyne*, 560 F.3d at 207-08. As the Ninth Circuit Court of Appeals explained,

> Like the tort of trespass, the Stored Communications Act protects individuals' privacy and proprietary interests. The Act reflects Congress's judgment that users have a legitimate interest in the confidentiality of communications in electronic storage at a communications facility. Just as trespass protects those who rent space from a commercial storage facility to hold sensitive documents, *cf. Prosser and Keeton on the Law of Torts* § 13, at 78 (W. Page Keeton ed., 5th ed.1984), the Act protects users whose electronic communications are in electronic storage with an ISP or other electronic communications facility.

---

[7] A claim under section 2702, the SCA provision at issue in Count II, also "has service provider exceptions." *Councilman*, 418 F.3d at 82.

*Theofel*, 359 F.3d at 1072-73. Considering further this analogy to the common-law protection from trespass, the Ninth Circuit Court of Appeals found that an "authorized" trespass would not preclude a defendant's liability, if the defendant knew or should have known in the exercise of reasonable care that the party giving consent was mistaken as to the nature or quality of the invasion intended, but only if the mistake extended to the essential character of the act itself, that is, what makes it harmful or offensive, rather than to some collateral matter that merely operated as an inducement. *Id.* at 1073 (recognizing that these are "fine and sometimes incoherent distinctions"). Ultimately, the Ninth Circuit Court of Appeals concluded that "[p]ermission to access a stored communication does not constitute valid authorization if it would not defeat a trespass claim in analogous circumstances." *Id.* Consequently, the court held, "Section 2701(c)(1) . . . provides no refuge for a defendant who procures consent by exploiting a known mistake that relates to the essential nature of his access." *Id.*

In *Van Alstyne*, the Fourth Circuit Court of Appeals found that § 2701(a) of the SCA more closely mirrors the common-law claim of trespass to a chattel, within the meaning of RESTATEMENT (SECOND) OF TORTS § 218, than it does a common-law claim of trespass on land, within the meaning of RESTATEMENT (SECOND) OF TORTS §§ 158 and 163. *Van Alstyne*, 560 F.3d at 207-08. This difference, the Fourth Circuit Court of Appeals explained, meant that the interest of a possessor of land in its inviolability was different from the interest of the possessor of a chattel, because there was no common-law protection in the form of nominal damages for harmless intermeddlings with a chattel, but only for wrongful actions plus causation and some harm for which damages can reasonably be assessed. *Id.* at 208. Thus, that court concluded that statutory minimum damages cannot be awarded on a claim pursuant to § 2701(a) of the SCA in the absence of proof of actual damages. *Id.*

With this overview of the SCA in mind, I turn to a summary of the parties' arguments on the viability of the plaintiffs' SCA claim in Count I.

### 3.  Arguments of the parties

### a.  The moving defendants' initial argument

The moving defendants' argument is, in essence, that Count I fails as a matter of law, because this case fits squarely within the statutory exception to liability under the SCA in § 2701(c)(1).  They contend that PIS and VAST, not PrairiE, were the entities providing an electronic communications service and that, therefore, the defendants' access to the Exchange server on which the pertinent e-mails were stored was authorized—that is, as the providers of the e-mail service, they could not "trespass" when they accessed the server. In the alternative, they argue that, even if PrairiE was the service provider within the meaning of § 2701(c)(1), as the plaintiffs allege, Count I still fails as a matter of law, because, on the face of the Complaint, the defendants' access to the server was authorized by PrairiE.

More specifically, they argue that the SCA was not intended to punish all invasions of privacy related to electronic communications, but to address the mounting threats of computer "hackers" and "electronic trespassers."  They argue that, for this reason, Congress included the statutory exception to liability under the SCA found in § 2701(c)(1), for access to stored electronic communications authorized by the provider of the electronic communications service.  This exception, they argue, is a statutory exception, not an affirmative defense, so that it is proper to dismiss a claim under the SCA where the claim on its face reveals the applicability of the exception.

Count I is such a claim, they contend, because, as pleaded, the pertinent "electronic communications" are Qualy's e-mails, the "facility" accessed was the Exchange server, and the e-mail service provided by PIS and VAST is the pertinent "electronic

communications service." They contend that the Complaint alleges that PIS and VAST "owned" the Exchange server on which the pertinent e-mails were stored and provided the e-mail service from which the pertinent e-mails were stored, so that PIS and VAST are the "providers" excepted by § 2701(c)(1) from liability for obtaining or accessing the e-mails stored on the Exchange Server. Even if the plaintiffs rely on their allegation that PrairiE is the service provider within the meaning of § 2701(c)(1), the moving defendants contend that such an allegation is merely conclusory, so that the court is not bound by it. Instead, they contend that the *factual* allegations show that PIS and VAST are the pertinent service provider. They contend that § 2701 does not contemplate the role of an information technology consulting company, but does contemplate the role of the entity that actually "provided" the system, even if it did so through a third party. If all else about this argument fails, the moving defendants argue that they still accessed the Exchange server with the knowledge, consent, and assistance of PrairiE, the alleged service provider. In this context, they argue that CCI's or Qualy's consent is irrelevant, as is any motivation that the defendants may have had for accessing the Exchange server or any use that they may ultimately have made of the e-mails obtained.

### b.    *The plaintiffs' response*

In response, the plaintiffs argue that PIS and VAST do not meet the definition of "provider" in the SCA, because those defendants are merely consumers and users of electronic communications services. The plaintiffs argue that the pertinent "provider" was PrairiE, as alleged in their Complaint, because PrairiE was the internet service provider essential to the operation of the PIS and VAST e-mail system. They argue that, as the "provider," PrairiE exceeded any authority it retained to grant the defendants access to the plaintiffs' personal, private e-mails in electronic storage on the PIS/VAST server. The plaintiffs argue, in the alternative, that even if PIS and VAST were the "provider," they

25

exceeded any authority that a provider retains to access electronic communications in electronic storage on their server. Thus, the plaintiffs contend that they have stated a plausible claim under the SCA in Count I.

More specifically, the plaintiffs argue that the plain language of § 2701(a) sweeps broadly enough to encompass the activities of so-called "electronic trespassers," whose access to a communications facility is closely analogous to the actions of a common-law trespasser. Thus, they contend that the nature and quality of the invasion intended by the person who authorized entry is important to determining whether the entry is authorized. Here, they contend that the defendants committed an unauthorized trespass, because the private, personal e-mails were never supposed to be stored on a third-party server in the first place.

The plaintiffs contend that the defendants' characterization of PIS and VAST as the providers of the electronic communications service and of their access to the pertinent e-mails as authorized, for purposes of the § 2701(c)(1) exception, is "strained." This is so, they argue, because it mischaracterizes the nature of an "electronic communications service" as contemplated by the SCA. They argue that an internet connection is essential to send or receive electronic communications, so that the relevant "electronic communications service" is internet access and the relevant "provider" is the internet service provider. Although they acknowledge that the Complaint alleges that the stored e-mails were actually from e-mail accounts hosted by three different internet service providers, they contend that PrairiE provided the services necessary for PIS and VAST to communicate electronically via their e-mail system. Thus, they assert that, reading the factual allegations of the Complaint in the light most favorable to them, it is plausible to conclude that PIS and VAST are *not* the pertinent "provider" for purposes of the SCA claim. Indeed, they point out that there is no allegation that PIS or VAST "owned" the

server on which the e-mails were stored, but only references to the "PIS/VAST server" in the Complaint, which plausibly imply that the server was provided by PrairiE to PIS and VAST for use in their computing facilities. The plaintiffs also contend that it is critical, in light of authorities cited by the defendants, that PIS and VAST *hired* PrairiE to provide hardware, software, and other services necessary to provide electronic communications services; PIS and VAST did not own, administer, or store communications on their own system. In an aside, the plaintiffs also assert that the defendants' argument about who is the pertinent provider and what access was authorized depends heavily on factual development yet to come and, therefore, is more appropriately resolved at the summary judgment stage.

In the alternative, the plaintiffs argue that, whichever of the defendants is the pertinent "provider," none of them had authority to access CCI's and Qualy's personal, private e-mail communications. This is so, they argue, because the defendants' access to the e-mails exceeded expected norms of intended use, where they accessed two e-mail accounts that were completely unrelated to the electronic communications service that PIS and VAST purportedly provided. They contend that the illegitimate reasons for such access, alleged in the Complaint, demonstrate that the access exceeded any authorization.

### c. *The moving defendants' reply*

In reply, the moving defendants argue that the plaintiffs' assertion of a broad-sweeping scope to the SCA would allow it to be used to punish virtually all privacy violations related to electronic communications in electronic storage, well beyond the objectives that Congress had when enacting the SCA. The defendants contend that the plaintiffs have "transformed" their § 2701(a) claim in their Resistance to the defendants' Motion To Dismiss, now asserting that the pertinent "provider" is not PrairiE, but an internet service provider, and that the pertinent "electronic communications service" was

neither the storage of e-mails nor the e-mail system itself, but internet access. The moving defendants assert that the plaintiffs' construction of "electronic communications service" is too narrow. They contend that the legislative history shows that Congress understood "electronic mail companies" to be "providers of electronic communications services," but the plaintiffs' construction would foreclose this result. They also contend that the plaintiffs' construction so narrows the statutory exception that it unreasonably expands the SCA to cover more conduct than Congress intended, because the exception would cover only conduct authorized by internet service providers, meaning that an employer could not access its own e-mail system, but the internet service provider could. The moving defendants argue that the plaintiffs' interpretations, creating a narrow exception and a broad statute, result in a scheme that vastly exceeds the scope of what Congress contemplated.

The moving defendants also argue that PIS and VAST "provided" the e-mail system, which is the relevant electronic communications service, even if they contracted with PrairiE to manage the Exchange server necessary to that service. They reiterate that the Complaint alleges, by use of possessives, that PIS and VAST "owned" the pertinent server and that allegations that PrairiE was the "provider" are merely conclusory. They argue that there is no practical difference between a company's ownership and administration of the facilities for its e-mail communications system and a company's contracting with a third party to provide the necessary facilities and administration of those facilities.

The moving defendants also argue that the SCA punishes trespasses upon *facilities*, not trespasses upon particular *communications*. Thus, they argue that the question is whether access to the pertinent *facility*—here, the Exchange server—was authorized, not whether access to particular *communications* was authorized. The moving defendants

argue that, under the facts alleged, they were authorized to access the pertinent *facility*. Similarly, they argue that, if trespass upon particular *e-mails* can form the basis for a § 2701(a) claim, the Complaint fails to allege that they *intentionally and knowingly* engaged in any prohibited conduct. They contend that, because there is no allegation that they even knew that any of CCI's or Qualy's private or unrelated e-mails from other accounts had been stored on the Exchange server, there is no allegation of the necessary mental state. They point out that the Complaint alleges that PrairiE, not PIS or VAST, was responsible for the presence of Qualy's non-PIS e-mails on the PIS and VAST server.

### d. The parties' supplemental arguments

In their May 6, 2011, Supplemental Brief In Support Of Plaintiffs' Resistance To Defendants' Motion To Dismiss (docket no. 24), the plaintiffs agree that I have correctly identified the elements of a § 2701(a) claim, as set forth below. They reiterate that the Complaint adequately alleges that PriariE is the provider of the pertinent electronic communications service. Thus, the focus of their Supplemental Brief is the sufficiency of their allegations that the moving defendants' access to the electronic communications service was not authorized or exceeded any authorization by PrairiE. They contend that, reading the Complaint in the light most favorable to them, one can plausibly infer the defendants' lack of authorization or conduct in excess of any authorization.

More specifically, they contend that one can reasonably infer from allegations that PrairiE continued to archive Qualy's e-mails from June 23, 2009, until November 25, 2009, and that the moving defendants obtained copies of e-mails stored on the PIS and VAST server that, at some point between June 23, 2009, and the point at which the e-mails were obtained by the defendants, PrairiE authorized access to the server where the e-mails were in electronic storage. That such access was in excess of any authorization, they contend, can be inferred from allegations that PrairiE negligently combined Qualy's private

e-mail accounts into the same Microsoft Outlook user profile as his PIS e-mail account, giving the defendants access to e-mails to which they never should have had access in the first place. The plaintiffs suggest that a reasonable inference is that any authorized access that the defendants obtained should have been limited to Qualy's PIS account e-mails. Access to more e-mails, they contend, exceeded expected norms of intended use.

In their May 6, 2011, Supplemental Brief In Support Of Defendants' Motion To Dismiss (docket no. 25), the moving defendants also agree that I have correctly identified the elements of a claim under § 2701(a). They point out that one of those elements is that the defendants obtained unauthorized access (or access in excess of authorization) to a *facility*, not just to certain e-mails. The pertinent *facility* here, they contend, is the Exchange e-mail server. The majority of their Supplemental Brief is devoted to reiterating their argument that their access to the Exchange server was authorized. In the portion of their argument more responsive to the questions that I posed for supplemental briefing, the moving defendants argue that the Complaint does not address in any way the question of whether PrairiE did *not* authorize the moving defendants' access to the e-mail server. They contend that such a premise would be so at odds with common sense that it cannot be reasonably inferred absent some specific allegations. They contend that the plaintiffs cannot now amend their pleadings to provide the necessary allegations without contradicting their present pleadings, which should not be permitted.

### 4. *Analysis*

#### a. *Elements of a § 2701(a) claim*

Again, a plaintiff must plead factual allegations sufficient to raise a plausible inference as to each element of a claim or cause of action. *Hamilton*, 621 fate 818-19; *accord Parkhurst*, 569 F.3d at 865 ("To survive a motion to dismiss, a complaint must contain factual allegations sufficient 'to raise a right to relief above the speculative

level. . . .'" (quoting *Bell Atlantic*, 550 U.S. at 555)); *B&B Hardware, Inc.*, 569 F.3d at 387 ("[T]he complaint must allege 'only enough facts to state a claim to relief that is plausible on its face.'" (quoting *Bell Atlantic*, 550 U.S. at 570)). A common sense, context-specific determination of whether a § 2701(a) claim is plausible, *id.* at 818, begins with a determination of the elements of a private cause of action (or a criminal charge) for violation of 18 U.S.C. § 2701(a).

As I indicated in my Order For Supplemental Briefing (docket no. 22), directing the parties to respond to my statement of the elements of a § 2701(a) claim, I have found no single clear statement of the elements of such a claim. However, parsing the statute and applicable case law, I concluded that such a claim has the following elements:

> *One*, the defendant intentionally accessed a facility through which an electronic communications service is provided;
>
> *Two*, such access was not authorized or intentionally exceeded any authorization by the person or entity providing the electronic communications service, the user of that service with respect to a communication of or intended for that user, or a federal statute;
>
> *Three*, the defendant thereby obtained, altered, or prevented authorized access to an electronic communication while it was in electronic storage in such system; and
>
> *Four*, the defendant's unauthorized access or access in excess of authorization caused actual harm to the plaintiff.

I recognize that some of the alternatives for these elements may not be at issue in this case. For example, as to element *two*, there is no indication from the Complaint or the defendants' Motion To Dismiss that authorization for access pursuant to one of the federal statutes enumerated in § 2701(c)(3) is at issue in this case. Similarly, as to element *three*, the Complaint suggests that only whether the defendants "obtained" access to stored electronic communications is at issue in this case, not whether they "altered" or "prevented

authorized access to" stored electronic communications, as also prohibited by § 2701(a). However, my goal at this time was to establish a correct and comprehensive statement of the elements of a § 2701(a) claim. In their supplemental briefs, both the moving defendants and the plaintiffs expressly agreed with this statement of the elements of the claim. Nevertheless, I reiterate here the authority on which my statement of the elements of this claim is based.

Element *one* is drawn from § 2701(a)(1) and (2), which both require access to the facility. *See* 18 U.S.C. § 2701(a) (stating two alternatives, "intentionally access without authorization" and "intentionally exceeds an authorization to access"); *see also Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, L.L.C.*, ___ F. Supp. 2d ___, ___, 2010 WL 5222128, *10 (S.D.N.Y Dec. 22, 2010) ("The access of the stored communication is a necessary element of the violation, not an independent violation unto itself."). Element *two* incorporates the requirements of both § 2701(a)(1) and (2) that the access be unauthorized or intentionally in excess of an authorization and the express statement in § 2701(c) of the entities capable of providing the required authority. *See Lasco Foods, Inc. v. Hall and Shaw Sales, Mktg. & Consulting, L.L.C.*, 600 F. Supp. 2d 1045, 1049-50 (E.D. Mich. 2009) (holding that a claim pursuant to § 2701(a) must allege that the defendants were not "authorized" to access the information at issue). Element *three* is drawn from the remainder of § 2701(a). *See* 18 U.S.C. § 2701(a) (stating that one who accesses the facility without or in excess of authorization "and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system" commits an offense); *see also Thompson v. Ross*, 2010 WL 3896533, *3 (W.D. Pa. Sept. 30, 2010) ("It is not enough for the electronic communication data to have been accessed in any format on any computer, in order to run afoul of the SCA, the data must have been accessed or obtained while it was within the

electronic storage of the electronic communications service itself."); *Thule Towing Sys., L.L.C. v. McNallie*, 2009 WL 2144273, *5 (E.D. Mich. July 15, 2009) ("Thule has not alleged [the element] that McNallie or Curt Manufacturing accessed Thule's electronic communication service (providing the ability to send or receive wire or electronic communications), which resulted in the subsequent obtainment, alteration, or prevention of authorized access to that same electronic communication service."). Finally, element *four* states a requirement of actual harm. *See, e.g., Van Alstyne*, 560 F.3d at 208 (holding that statutory minimum damages cannot be awarded in the absence of proof of actual damages).

More specifically, as to element *two*—the element most critical to the sufficiency of the pleading of the § 2701(a) claim in this case—the express cross-references in subsections (a) and (c) of § 2701 to each other make clear, in my view, that the "authorization" in subsection (a) must be from an entity identified in subsection (c). *See* 18 U.S.C. § 2701(a) ("Except as provided in subsection (c) of this section, whoever accesses without authorization . . . or intentionally exceeds an authorization to access. . . ."); *id.* at § 2701(c) ("Subsection (a) of this section does not apply with respect to conduct authorized [by specified entities]."). These cross-references also make clear that § 2701(c) is not simply an affirmative defense, but an integral part of the definition of the claim or offense. *Cf. In re DoubleClick, Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 507-08 (S.D.N.Y. 2001) (reading § 2701(c) as a statutory exception to liability under § 2701(a) and, thus, part of the definition of the offense or claim); *see also Lasco Foods, Inc.*, 600 F. Supp. 2d at 1049-50 (holding that a claim pursuant to § 2701(a) must allege that the defendants were not authorized to access the information at issue).

Moreover, nothing in the authorization of a civil action by "any provider of electronic communication service, subscriber, or other person aggrieved by any violation

of this chapter" in § 2707(a) leads me to believe that any entity *other than* those identified in § 2701(c) could authorize access to the facility. Two of the categories of persons or entities who can bring suit pursuant to § 2707 are expressly identified as those who *can* authorize access in § 2701(c), the "provider" of the electronic communications service, and the "subscriber" in § 2707(a), which I read to be the same as the "user of that service" in § 2701(c). The category of persons who can bring suit pursuant to § 2707(a) not expressly accounted for in § 2701(c) is "other person aggrieved." Where the authority for access that a "user of that service" may grant in § 2701(c) is circumscribed ("with respect to a communication of or intended for that user"), I cannot read "other person aggrieved" in § 2707 to mean that any person who might *otherwise* be aggrieved by access to the electronic communications facility can grant authorization for unfettered access to the facility under § 2701(a). Such a reading is nonsensical, because it might permit one user of the service, who might otherwise be aggrieved by unauthorized access, to authorize access to another user's e-mails in electronic storage, which plainly was not the intent of the statute and would make the limitation on a "user's" authority to allow access in § 2701(c)(2) a nullity. Also, "aggrieved person" is defined for purposes of the SCA in § 2510(11) as "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed." *Councilman*, 418 F.3d at 81 (stating that definitions from the Wiretap Act (and the ECPA), 18 U.S.C. § 2510, are incorporated into the SCA by 18 U.S.C. § 2711(a)). Thus, a "person aggrieved" is limited in much the same way as a "user" capable of granting authority to one whose electronic communication was "intercepted" or "accessed," making a "user" within the meaning of § 2701(c)(2) essentially the same as a "person aggrieved" in § 2707(a), and no additional category of persons capable of granting authorization is created by § 2707(a).

#### b.    *Pleading of the elements*

I turn, next, to the question of whether each of the elements of a § 2701(a) claim has been adequately pleaded in this case, that is, whether the Complaint contains factual allegations sufficient to raise a plausible inference as to each element of the § 2701(a) claim. *Hamilton*, 621 F.3d at 818-19; *accord Parkhurst*, 569 F.3d at 865 ("To survive a motion to dismiss, a complaint must contain factual allegations sufficient 'to raise a right to relief above the speculative level. . . .'" (quoting *Bell Atlantic*, 550 U.S. at 555)); *B&B Hardware, Inc.*, 569 F.3d at 387 ("[T]he complaint must allege 'only enough facts to state a claim to relief that is plausible on its face.'" (quoting *Bell Atlantic*, 550 U.S. at 570)).

#### i.    *Element one*.  Element *one* requires the plaintiffs to prove that the defendant intentionally accessed a facility through which an electronic communications service is provided.  Section 2510(12) defines an "electronic communication" as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce, but does not include [certain specified communications]."  E-mail messages are such "electronic communications." *See United States v. Szymuszkiewicz*, 622 F.3d 701, 705 (7th Cir. 2010); *Councilman*, 418 F.3d at 71.  Section 2510(15) defines "electronic communication service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications."  This definition "'covers basic e-mail services.'" *See United States v. Warshak*, 631 F.3d 266, 282 (6th Cir. 2010) (quoting *United States v. Warshak*, 532 F.3d 521, 523 (6th Cir. 2008) (*en banc*)).  Unfortunately, "facility" is not defined by § 2510.  Nevertheless, the pertinent "facility through which an electronic communication service is provided" is plausibly, at the very least, an e-mail server, where the "electronic communications service" itself includes "basic e-mail services." *Id.*  The Complaint adequately pleads this

element of a § 2701(a) claim, based on allegations that defendants PIS, VAST, and Howard "intentionally accessed the Exchange server through which Defendant PrairiE provided electronic communication service to Defendants," *see* Complaint, ¶ 52, and plausible inferences that the defendants obtained access to the server from the factual allegation that the defendants did, in fact, have copies of certain e-mails, with which they confronted Qualy during mediation of their contract dispute. *See id.* at ¶¶ 46, 56-57.

*ii.    **Element two**.* Element *two* requires the plaintiffs to prove that the defendants' access to the Exchange server was not authorized or intentionally exceeded any authorization by the person or entity providing the electronic communications service, the user of that service with respect to a communication of or intended for that user, or a federal statute. This element is the central focus of the defendants' challenge to the pleading of this claim, because they contend that the plaintiffs have identified the wrong entity, PrairiE instead of PIS and VAST, as the "provider" of the pertinent "electronic communications service," which they contend is the PIS e-mail service. The defendants contend that the face of the Complaint shows that their access was authorized, either because they were the "provider" or because PrairiE was the "provider" and necessarily gave them the required authorization. I find that the pleading of this element is deficient, as a matter of law, although not for the reasons originally identified by the moving defendants.

While "electronic communications service," as defined in § 2510(15), includes "basic e-mail services," as explained above, *see Warshak*, 631 F.3d at 282, there is no statutory definition of "person or entity providing a wire or electronic communications service." There is no question that the "provider" that the plaintiffs expressly identify in their complaint is PrairiE, not PIS and VAST. *See* Complaint, at ¶¶ 50, 52, 53, 55. The

question is whether PrairiE is or plausibly could be such a provider, in light of the factual allegations.

The plaintiffs contend that the "provider" of an e-mail service can only be the entity that provides internet access, because only internet access provides users of the e-mail service with the ability to send or receive wire or electronic communications, citing *DoubleClick, Inc. Privacy Litig.*, 154 F. Supp. 2d at 508. Assuming, for the sake of argument, that the relevant "provider" of an e-mail service is the entity that provides internet access, the plaintiffs have not expressly alleged that PrairiE or any other entity is a provider of internet access in relation to the PIS e-mail system. They have alleged only that PrairiE provided "information technology and web hosting services," *see* Complaint at ¶ 30, " managed, maintained, and archived" the Exchange server for PIS and VAST, *see id.* at ¶ 31, "provided electronic storage of e-mail communications," *see id.* at ¶ 50; *see also id.* at ¶ 54 (" . . . e-mails held in storage by PrairiE. . . . "), and provided "the Exchange server" through which it "provided electronic communication service." *See id.* at ¶¶ 52, 53, 55. None of these allegations gives rise to reasonable inferences that PrairiE also provided internet access. Although the plaintiffs contend that they have alleged that PrairiE "provided Internet access to PIS and VAST," citing Complaint, ¶¶ 29-31, *see* Plaintiffs' Resistance Brief at 2-3, there is no reference to any entity providing internet access in the cited paragraphs of the Complaint.

An additional, fundamental problem is that the plaintiffs do not allege that PrairiE did *not* authorize the access to the Exchange server by PIS, VAST, or Howard. This glaring omission is not cured by the plaintiffs' allegations that *they* "did not authorize Defendants' access to personal, private Mediacom or CCI e-mails held in electronic storage by PrairiE, and Plaintiffs did not consent to Defendants' access." *Id.* at ¶ 54. This is so, because a "provider's" authorization would make a "user's" lack of

authorization of no consequence. Section 2701(c) identifies three entities that independently can authorize complete or limited access to the facility through which an electronic communications service is provided, with no indication that denial of authorization from any one would "trump" or "veto" authorization by another. In other words, to allege the lack of authorization, as required, the plaintiffs would have to allege sufficient facts to make it plausible that *none* of the entities identified in § 2701(c) authorized the access. The plaintiffs have not done so, here.

The nearest that the plaintiffs come to addressing the requirement that they plead the lack of authorization by a "provider" is to allege that "after June 23, 2009, Defendants intentionally exceeded any existing authorization [presumably from the provider] to access the Exchange server through which PrairiE provided electronic communication service." Complaint at ¶ 53. However, in the absence of any factual allegations that the "provider" provided any authorization at all, or any allegations concerning the nature of any such authorization, there are no plausible inferences that the defendants' access exceeded, intentionally or otherwise, any such authorization. *See Hamilton*, 621 F.3d at 818-19; *Parkhurst*, 569 F.3d at 865; *B&B Hardware, Inc.*, 569 F.3d at 387.

In their Supplemental Brief (docket no. 24), the plaintiffs contend that there are allegations from which the lack of authorization or conduct in excess of any authorization can be inferred. They point to allegations that PrairiE continued to archive Qualy's e-mails from June 23, 2009, until November 25, 2009, and that the moving defendants obtained copies of e-mails stored on the PIS and VAST server, *see* Complaint at ¶¶ 37, 38, 46, and 52, as plausibly suggesting that, at some point between June 23, 2009, and the point at which the e-mails were obtained by the defendants, PrairiE authorized access to the server where the e-mails were in electronic storage. I do not agree. The fact that e-mails were obtained gives rise to reasonable inferences that the facility was accessed; it

implies nothing whatever about whether the access was authorized—indeed, it begs precisely that question. Because the plaintiffs have pointed to no allegation reasonably suggesting that the defendants' access to the facility was *not* authorized by PrairiE, and, indeed, apparently concede that PrairiE *did* authorize the defendants' access, the sufficiency of their pleading of this claim turns on whether they have sufficiently pleaded that the defendants' access *exceeded the authorization* provided by PrairiE. *See* 18 U.S.C. § 2701(a)(2).

The plaintiffs argue that it is reasonable to infer that the defendants' access was in excess of any authorization from allegations that PrairiE negligently combined Qualy's private e-mail accounts into the same Microsoft Outlook user profile as his PIS e-mail account, giving the defendants access to e-mails to which they never should have had access in the first place. *See* Complaint at ¶¶ 29, 34, 35, 69-73. The plaintiffs suggest that a reasonable inference is that any authorized access that the defendants obtained should have been limited to e-mails in Qualy's PIS account. Access to more e-mails, they contend, exceeded expected norms of intended use. This argument fails, however, as the moving defendants contend, because the question is not whether access to particular *e-mails* was authorized or in excess of authorization, but whether access to "*a facility* through which an electronic communication service is provided" was unauthorized or was in excess of authorization. *See* 18 U.S.C. § 2701(a)(1) (emphasis added); *see also id.* at (a)(2) (prohibiting access in excess of authorization to "that facility"). The plaintiffs have cited absolutely no portions of the Complaint reasonably suggesting that the defendants' access to *the facility*, the Exchange server, was in excess of authorization by PrairiE.

Moreover, as noted above, the Third Circuit Court of Appeals has recognized that, read literally, § 2701(c)(1) "except[s] from Title II's protection all searches by communications service providers." *Fraser*, 352 F.3d at 115. I also read § 2701(c)(1) as

39

excepting from Title II's protection all searches, of whatever scope, *authorized* by service providers.[8] This is true, at least in the absence of any allegations that the defendants procured PrairiE's authorization by exploiting a known mistake that related to the essential nature of their access, as opposed to a mistake about what might be found on the server. *See Theofel*, 359 F.3d at 1073 ("Section 2701(c)(1) . . . provides no refuge for a defendant who procures consent by exploiting a known mistake that relates to the essential nature of his access.").

It is not necessary to probe further at this point in this case what limitations on access a provider might impose upon its authorization of another to access the pertinent facility, where there are no allegations that PrairiE imposed any limitations on the defendants' access and no allegations that PrairiE's authority to search or to authorize a search of the server was somehow limited. The plaintiffs' pleading of the second element of their § 2701(a) claim in Count I is insufficient, as a matter of law, so that the claim fails to state a claim upon which relief can be granted.

Although this conclusion is fully dispositive of the sufficiency of the pleading of the § 2701(a) claim, I will also consider the defendants' assertion that the pertinent electronic communications service was the PIS e-mail service and that PIS and VAST, not PrairiE, provided that system. The defendants contend that, because PIS and VAST provided the e-mail service, they necessarily had authorization to access their own electronic communications service.

Above, I assumed, for the sake of argument, that the pertinent provider is a provider of "internet access," as the plaintiffs argue. I do not accept that argument,

---

[8]In contrast, a "user" may only provide limited authorization to access the facility, specifically, "with respect to a communication of or intended for that user." 18 U.S.C. § 2701(c)(2).

however. I recognize that the parties suggest that there is split in the authorities on this question. *Compare Steinbach v. Village of Forest Park*, 2009 WL 2605283, *5 (N.D. Ill. Aug. 25, 2009) ("Similar to the company in *JetBlue,* Forest Park purchases Internet access from a third-party provider, and does not itself provide Internet service for purposes of the [§ 2701(c)(1)] exception."); *In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 309 (E.D.N.Y. 2005) (noting that, in *Andersen Consulting L.L.P. v. UOP*, 991 F. Supp. 1041, 1043 (N.D. Ill. 1998), "the [private company providing e-mail to its independent contractor] was not considered an independent provider of Internet services for the simple reason that, like any other consumer, it had to purchase Internet access from an electronic communication service provider."); *DoubleClick*, 154 F. Supp. 2d at 508 (holding that the relevant "electronic communications service" was "internet access"); *with Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 114-15 (3d Cir. 2003) ("[W]e hold that, because Fraser's e-mail was stored on Nationwide's system (which Nationwide administered), its search of that e-mail falls within § 2701(c)'s exception to Title II."); *United States v. Grady*, 2010 WL 441513, *6 (E.D. Mo. Feb. 4, 2010) (stating, "[T]hose who 'provide their employees with "the ability to send or receive electronic communications" are "person[s] or entit[ies] providing a wire or electronic communications service" for purposes of the exemption,'" (quoting *Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, 2007 WL 4394447, *6 (E.D. Pa. Dec. 13, 2007), and holding that the government was the provider of the e-mail system); *Freedom Calls Found'n v. Bukstel*, 2006 WL 845509, *27 (E.D.N.Y. Mar. 3, 2006) (the defendant company was the provider of the e-mail system and, thus, fell within the exception in § 2701(c)). I find more persuasive those authorities holding that a provider of an e-mail system *can be* a provider of electronic communications services within the meaning of § 2701(c).

First, such a conclusion seems to me to be more consistent with the definition of "electronic communication service" in § 2510(15) as "any service which provides to users thereof the ability to send or receive wire or electronic communications," which courts have construed to include an "e-mail service." *See Warshak*, 631 F.3d at 282. It seems to me to be nonsensical to define an "electronic communications service" as a service providing the ability to send electronic communications, such as e-mail, then define the provider of the service as the internet service provider, instead of the e-mail service provider. Internet access for an e-mail service is no more an e-mail service than external sewer pipes are a household plumbing service, even if each is essential to operation of the service in question.

Second, purportedly contrary authorities cited by the plaintiffs are distinguishable. *See Steinbach*, 2009 WL 2605283 at *5 (noting that the defendant provided the e-mail address to the plaintiff, but a third party provided the e-mail service, so that the defendant did not itself provide internet service for the purposes of the exception in § 2701(c), suggesting that the entity providing the e-mail service *would* have been the pertinent "provider"); *In re JetBlue*, 379 F. Supp. 2d at 308-09 (holding that the airline was not a "provider" of electronic communications services, where it simply sold its products on line, but did not provide internet access); *DoubleClick*, 154 F. Supp. 2d at 507-08 (defining the relevant "electronic communications service" to be "internet access," but not in the context of a claim relating to an e-mail service, but in the context of internet advertising on websites); *Andersen*, 991 F. Supp. at 1042-43 (considering whether a company that provided an independent contractor with access to its internal e-mail system was a provider of "electronic communication services *to the public*" within the meaning of 18 U.S.C. § 2702(a)(1), not whether the company was a "provider" within the meaning of the exception in § 2701(c)).

Third, reading "provider" of electronic communications services to include providers of e-mail services comports with the legislative history of the SCA. As the moving defendants suggest, the Senate Report on the ECPA, which included the SCA as Title II, states that "electronic mail companies are providers of electronic communication services." S. Rep. No. 541 at 14 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3568.

This is not to say that a company with an e-mail system is *necessarily* a provider of electronic communications services. The extent of the company's ownership or control of hardware and software and the extent of its administration of the system may well be relevant to what entity is ultimately the provider of the service. *See, e.g., Fraser*, 352 F.3d at 114-15 (making a fact-based conclusion that a company was the "provider" of its e-mail service, and thus fell within § 2701(c), "because Fraser's e-mail was stored on Nationwide's system (which Nationwide administered)").

Moreover, to prevail on the motion to dismiss on the ground that they initially argued, the defendants would have to establish that the *only* plausible conclusion from the allegations in the Complaint would be that PIS and VAST are the providers of the PIS e-mail service, creating an "insuperable bar" to the plaintiffs' contention that some other entity, such as PrairiE, was the pertinent provider. *See Hamilton*, 621 F.3d at 819 (allegations that raise plausible inferences of alternative scenarios, one that satisfies a particular element and one that does not satisfy that element, are sufficient to state a claim, because "[w]hich inference will prove to be correct is not an issue to be determined by a motion to dismiss"); *see also Benton*, 524 F.3d at 870 ("Where the allegations show on the face of the complaint that there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is [still] appropriate." (citing *Parnes*, 122 F.3d at 546, for this standard in a discussion of Rule 12(b)(6) standards in light of *Bell Atlantic*)). Contrary to the moving defendants' contentions, there are sufficient factual allegations, not merely conclusory

allegations, in the Complaint to plausibly suggest that PrairiE, not PIS and VAST, was the "provider" of the PIS e-mail system. First, there is no express allegation that PIS and VAST "owned" the Exchange server, and references to "PIS and VAST's server," from which the moving defendants draw an inference that PIS and VAST "owned" the server, could just as plausibly support the inference that PrairiE owned the server, but provided it for use by PIS and VAST, particularly where the Complaint expressly alleges that e-mails were "copied on to the server provided by PrairiE to PIS and VAST." *See, e.g.,* Complaint at ¶ 34; *see also Hamilton*, 621 F.3d at 819 (allegations that raise plausible inferences of alternative scenarios, one that satisfies a particular element and one that does not satisfy that element, are sufficient to state a claim, because "[w]hich inference will prove to be correct is not an issue to be determined by a motion to dismiss") Second, the Complaint does allege that PrairiE, not PIS and VAST, managed, maintained, and archived the server, *see id.* at ¶ 31, and connected and disconnected file-sharing and e-mail users from the server, *see id.* at ¶¶ 29, 37-38, all of which very plausibly suggests that PrairiE "administered" the e-mail system. These allegations plausibly suggest that the "system" on which the e-mails in question were stored was PrairiE's and that it was "administered" by PrairiE. *Cf. Fraser*, 352 F.3d at 115 (holding that an employer was the provider of an e-mail system, because the e-mails were stored on the employer's system, which the employer administered).

Indeed, while the moving defendants assert that the Complaint "on its face" shows that they were the "provider" of the pertinent service, and/or that their access to the service was authorized by PrairiE, if it was the "provider" of the pertinent service, I believe that these are fact-driven arguments not susceptible to resolution on a motion to dismiss. *See Hamilton*, 621 F.3d at 819. Again, plausible inferences from the Complaint are that PrairiE, not PIS and VAST, was the "provider" of the pertinent service, so that

a contrary conclusion must necessarily be based on development of facts not currently in the record. The moving defendants also assert that their authorization by PrairiE to access the Exchange server, if PrairiE was the "provider," is apparent from the allegations that PIS and VAST hired PrairiE to manage, maintain, and archive the server and to perform other technology-related services for or on behalf of PIS and VAST at Howard's instructions and allegations that their access to the Exchange server was with the knowledge, consent, and assistance of PrairiE. Again, I find that this argument is fact-driven, not one that arises from the only plausible inferences from the allegations of the Complaint and, thus, is not an appropriate basis for dismissal. It might be possible to resolve these matters at summary judgment, on a more complete record—assuming that a viable § 2701(a) claim is pleaded—but it is not possible to do so on the present pleadings.

Thus, the moving defendants are not entitled to dismissal of the § 2701(a) claim on the grounds that they assert.

*iii.     Elements three and four*. Because there appears to be no challenge to the adequacy of the pleading of the remaining elements of the plaintiffs' § 2701(a) claim, I will consider those elements only very briefly. As noted above, element *three* requires the plaintiffs to prove that, because of their unauthorized access (or access in excess of any authorization), the defendants thereby obtained, altered, or prevented authorized access to an electronic communication while it was in electronic storage in such system. Element *four* requires the plaintiffs to prove that the defendants' unauthorized access or access in excess of authorization caused actual harm to the plaintiff.

As to element *three*, there are allegations from which one could plausibly infer that the defendants obtained access to electronic communications, most notably from allegations that the defendants did, indeed, have copies of such e-mails and disclosed them to Qualy in the course of the mediation of the parties' contract dispute. *See* Complaint, ¶¶ 46, 58.

45

Also, as to the requirement in element *three* that the defendants accessed communications in electronic storage, "[t]he privacy protections established by the SCA were intended to apply to two categories of communications defined by the statutory term 'electronic storage,'" as defined in § 2510(17): one category involving communications in "temporary, intermediate storage," and the other category involving communications in "any storage . . . for purposes of backup protection of such communication." *Id.* at 81 (quoting § 2510(17)); *Theofel*, 359 F.3d at 1072 (also identifying from the statute these two categories of "electronic storage"). It is not clear whether the claim in Count I of the Complaint involves one or both of these categories of communications in "electronic storage." Nevertheless, the Complaint does plead facts from which there are plausible inferences that the e-mails accessed were in "electronic storage," either temporarily, or for purposes of backup protection, because it alleges, for example, that the e-mails were accessed from the Exchange server after Howard directed PrairiE to archive all such e-mails and PrairiE did so. *See* Complaint at ¶¶ 38-40.

Finally, element *four* requires proof of actual harm. *See, e.g., Van Alstyne*, 560 F.3d at 204-05 (holding that statutory minimum damages cannot be awarded in the absence of proof of actual damages). Although the Complaint does not appear to allege specifically what actual harms CCI and Qualy may have suffered, one can plausibly infer from the allegations made that the plaintiffs suffered actual harm in the form of an impediment to a settlement of the underlying contract dispute by mediation, as well as the harms of loss of attorney-client confidentiality concerning strategy in the underlying contract dispute and other harms to privacy from disclosure of Qualy's contacts with a woman not his spouse. *Cf. Dura Pharmaceuticals*, 544 U.S. at 346-47 ("ordinary pleading rules are not meant to impose a great burden upon a plaintiff," but the plaintiff must provide some indication of "the loss and the causal connection that the plaintiff has in mind").

Therefore, the pleading of these elements is sufficient.

## 5.    *Summary*

The plaintiffs have failed to plead factual allegations sufficient to raise a plausible inference as to each element of a § 2701(a) claim. *Hamilton*, 621 F.3d at 818-19. The specific deficiencies are their failure to plead, as required by element *two*, allegations from which one could plausibly infer that the provider of the pertinent electronic communications service did *not* authorize the access to the Exchange server by PIS, VAST, or Howard, and their failure to plead, in more than a conclusory manner, that the defendants intentionally exceeded any existing authorization to access the facility through which an electronic communications service was provided. Therefore, their § 2701(a) claim in Count I is subject to dismissal pursuant to Rule 12(b)(6). However, their claim is not subject to dismissal on the basis that it alleges no more than authorized access by the provider of the electronic communications service, as asserted by the moving defendants.

While it is true that this disposition leaves unresolved some of the questions that were uppermost in the parties' minds, it does resolve the questions properly presented on a motion to dismiss, rather than ultimately fact-driven questions about the merits of the SCA claim. In other words, while the parties wanted to litigate now the merits of the SCA claim, I have been more circumspect. The parties may have couched their arguments in terms of what they believed or wished the Complaint showed on its face or what they believed or wished could plausibly be inferred from the allegations in the Complaint, for example, about who was the pertinent "provider" of electronic communications services and whether or not access to the service was authorized, but their arguments clearly presented issues better resolved at summary judgment or at trial, if the Complaint had stated a claim. Instead, I have addressed only what a court can properly consider in the context of a pre-answer motion to dismiss pursuant to Rule 12(b)(6), that is, whether the

Complaint plausibly states a claim pursuant to § 2701(a) upon which relief can be granted. As to the § 2701(a) claim in Count I, the Complaint does not plausibly state a claim.

## B. The State-Law Claims

The moving defendants assert that, if I dismiss Count I for failure to state a claim upon which relief can be granted, I should also dismiss the state-law claims against them in Counts IV and V—the claims of invasion of privacy, against defendants PIS, VAST, and Howard, and extortion, against the same defendants and defendant Hagen—for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. I begin my analysis of this part of the defendants' Motion To Dismiss with a brief recitation of the principles of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

### 1. Principles of supplemental jurisdiction

Section 1367 of Title 28 of the United States Code, which governs a district court's supplemental jurisdiction over state law claims, provides as follows:

> **(a)** Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims *that are so related to claims in the action within the original jurisdiction that they form part of the same case or controversy* under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve joinder or intervention of additional parties.

28 U.S.C. § 1367(a) (emphasis added). For example, substantial interests are served by having a district court rule on state-law claims where the factual bases for the state and federal causes of action are closely related (such as where no additional evidence is necessary in order for the court to render a judgment on the state-law claims), the state-law

48

claims are not novel, but involve well-understood principles of tort law, and the state-law claims do not predominate over the federal issues that give the court jurisdiction. *McLaurin v. Prater*, 30 F.3d 982, 985 (8th Cir. 1994).

The moving defendants do not assert that supplemental jurisdiction over the state-law claims in Counts IV and V was improper in the first instance. Instead, they contend that the court should decline to exercise supplemental jurisdiction over those claims if it dismisses Count I, the federal claim on which federal jurisdiction is based, pursuant to § 1367(c)(3). For this reason, the moving defendants' motion to dismiss the supplemental state-law claims cannot properly be construed as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, but only as a request that the court exercise its discretion to dismiss the state-law claims pursuant to § 1367(c)(3). *See Lindsey v. Dillard's, Inc.*, 306 F.3d 596, 599 (8th Cir. 2002) ("A district court that remands supplemental claims [pursuant to § 1367(c)(3)] is not remanding them for lack of subject matter jurisdiction. . . . Instead, the district court maintains discretion to either remand the state law claims or keep them in federal court.").

Section 1367(c)(3) provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction. . . ." As the Eighth Circuit Court of Appeals has explained,

> "It is within the district court's discretion to exercise supplemental jurisdiction after dismissal of the federal claim." *Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1249 (8th Cir. 2006). However, "[w]here, as here, resolution of the remaining claims depends solely on a determination of state law, the Court should decline to exercise jurisdiction." *Farris v. Exotic Rubber and Plastics of Minn., Inc.*, 165 F. Supp. 2d 916, 919 (D. Minn. 2001) (citing *Baggett v. First Nat'l Bank*,

> 117 F.3d 1342, 1353 (11th Cir. 1997)); *see also Gregoire v. Class*, 236 F.3d 413, 420 (8th Cir. 2000) (stating that "[t]he judicial resources of the federal courts are sparse compared to the states. We stress the need to exercise judicial restraint and avoid state law issues wherever possible.") (quoting *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir. 1990)). In deciding whether to remand a case in this context, the courts consider "factors such as judicial economy, convenience, fairness and comity." *Quinn*, 470 F.3d at 1249.

*Glorvigen v. Cirrus Design Corp.*, 581 F.3d 737, 749 (8th Cir. 2009). In its consideration of whether or not a district court should exercise supplemental jurisdiction, the Eighth Circuit Court of Appeals has "'stress[ed] the need to exercise judicial restraint and avoid state law issues whenever possible.'" *Gregoire v. Class*, 236 F.3d 413, 420 (8th Cir. 2000) (quoting *Condor Corp.*, 912 F.2d at 220). The Supreme Court has made clear, however, that dismissal of state-law claims when the federal claims are dismissed is not "a mandatory rule to be applied inflexibly in all cases," even if dismissal is usually appropriate, after considering judicial economy, convenience, fairness, and comity. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

The Eighth Circuit Court of Appeals reviews for abuse of discretion a district court's decision on whether or not to exercise supplemental jurisdiction over remaining state law claims after dismissal of federal claims upon which federal jurisdiction is based. *See Glorvigen*, 581 F.3d at 743 (citing *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, ___ U.S. ___, 129 S. Ct. 1862, 1864-65 (2009)).

## 2. *Arguments of the parties*

The moving defendants contend that, if the court dismisses Count I, against defendants PIS, Vast, and Hagan, it should also dismiss the supplemental state-law claims against PIS, VAST, Hagan, and Howard, pursuant to 28 U.S.C. § 1367(c)(3). They argue

that such dismissal is appropriate here, where no discovery or other proceedings have been conducted, there is no federal interest in deciding the state-law claims, and the plaintiffs would not be prejudiced by such a dismissal, as they could refile the state-law claims in an appropriate forum.

In contrast, the plaintiffs contend that the viability of the claim in Count I means that the court should continue to exercise supplemental jurisdiction over the state-law claims in Counts IV and V. They point out that the defendants do not argue that Counts IV and V are not part of the same case or controversy as Count I, nor do the defendants point to any other reason for dismissal of the state-law claims.

### 3. Analysis

I recognize that a federal court should avoid deciding matters of state law, when it need not do so. *See Gregoire*, 236 F.3d at 420. I also recognize that there is no indication that resolution of the claims in Counts IV and V depend upon anything other than state law. *See Glorvigen*, 581 F.3d at 749. Finally, I recognize that this litigation is still in the early pleading stages, so that neither the parties nor the court have expended significant resources on the state-law claims. *Id.*

Even so, I am not convinced that § 1367(c)(3) applies here, because I have not "dismissed *all claims* over which [the federal court] has original jurisdiction." 28 U.S.C. § 1367(c)(3) (emphasis added); *see Winegarner v. City of Coppell*, 2006 WL 2485847, *10 (N.D. Tex. Aug. 28, 2006) (noting the "all claims" language in § 1367(c)(3) and declining to dismiss the plaintiff's state-law claims against the moving defendants, after dismissal of the federal claims against them, at a preliminary stage of the proceedings, because federal claims were still pending against other defendants and the court, therefore, still had supplemental jurisdiction over the state-law claims against the moving defendants). Although I have dismissed the only federal claim against the moving defendants, the SCA

claim pursuant to 18 U.S.C. § 2702, over which this court has original jurisdiction, remains pending against defendant PrairiE. I cannot say that the federal claim against PrairiE is analytically distinct from the remaining state-law claims against the moving defendants, such that the claims against PrairiE are severable from the remaining claims against the moving defendants. *Compare Cox v. Sugg*, 484 F.3d 1062, 1068 (8th Cir. 2007) (remanding the case with directions to sever the "analytically distinct" federal claims against one defendant, then dismiss all federal claims against the other defendants pursuant to Rule 12(b)(6) and dismiss the state-law claims against those defendants pursuant to § 1367(c)(3)). Indeed, I find that the state-law claims against the moving defendants are related to and arise from essentially the same facts as the state and federal claims against PrairiE, such that the state-law claims against the moving defendants are supplemental to the federal claim against PrairiE. *See* 28 U.S.C. § 1367(a). The moving defendants have not argued otherwise. Moreover, fairness and convenience weigh in favor of litigating the state-law claims against the moving defendants with the claims against PrairiE, resources of the courts and the parties would be wasted by forcing the plaintiffs to pursue litigation on related claims in both state and federal court, and comity is not offended, at least where there has been no showing that the state-law claims are novel or predominate over the federal claim against PrairiE. *See Carnegie-Mellon Univ.*, 484 U.S. at 350 n.7; *see also McLaurin*, 30 F.3d at 985 (finding that substantial interests are served by having a district court rule on state-law claims where the factual bases for the state and federal causes of action are closely related (such as where no additional evidence is necessary in order for the court to render a judgment on the state-law claims), the state-law claims are not novel, but involve well-understood principles of tort law, and the state-law claims do not predominate over the federal issues that give the court jurisdiction). Certainly, this is not

a case in which dismissal of the state-law claims against the moving defendants is mandatory or even advisable. *Id.*

Therefore, I decline the moving defendants' invitation to dismiss the state-law claims against them upon dismissal of the federal claim against them. Of course, the plaintiffs might be able to dismiss their state-law claims and refile them in state court, should they choose to do so.

### III. CONCLUSION

Although not on the grounds originally asserted by the moving defendants, I agree with the moving defendants that the plaintiffs' SCA claim pursuant to § 2701(a) in Count I should be dismissed for failure to state a claim upon which relief can be granted. I do not rely on the moving defendants' assertion that the Complaint shows, on its face, that PIS and VAST were the "providers" of the pertinent electronic communications facility and, thus, any access they may have made was authorized, but on the failure of the plaintiffs to allege adequately that the moving defendants' access to the facility was unauthorized or intentionally exceeded any authorization. I also decline to dismiss the state-law claims against the moving defendants pursuant to § 1367(c)(3), because I find that those claims are related to the federal claim against defendant PrairiE that is still before me.

The dismissal of the federal claim against the moving defendants plainly has nothing to do with whether or not the plaintiffs were somehow "wronged," either by the acquisition of the personal, private e-mails in question, the alleged use of those e-mails as bargaining chips in the mediation of the parties' underlying contract dispute, or both. What this decision says is that the § 2701(a) claim, at least as pleaded, is not the appropriate vehicle to obtain a remedy for any such wrongs.

THEREFORE, the March 1, 2011, Motion To Dismiss (docket no. 13) filed by defendants PIS, VAST, Howard, and Hagen is **granted in part and denied in part**, as follows:

1.      The motion is **granted** as to Count I, and that Count is **dismissed** pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted; and

2.      The motion is **denied** as to Counts IV and V, as I find that the court may properly exercise supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a) and that dismissal of those claims is not warranted pursuant to 28 U.S.C. § 1367(c)(3).

The claims against defendant PrairiE, in Counts II and III of the Complaint, are unaffected by this ruling and remain before this court.

**IT IS SO ORDERED.**

**DATED** this 19th day of May, 2011.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA